United States District Court
Southern District of Texas

**ENTERED**
July 28, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEROS CHRISTOPHER CANTU, (SPN # 02491967), | § § § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | CIVIL ACTION NO. H-25-2109 |
| CITY OF HOUSTON, *et al.*, | § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Heros Christopher Cantu, (SPN #02491967), was previously detained at the Harris County Jail.[1] Proceeding *pro se* and *in forma pauperis*, he filed a civil-rights complaint under 42 U.S.C. § 1983. (Dkt. 1). Broadly speaking, he alleges that he was illegally detained on March 21, 2025, by Officer Ayala of the City of Houston Police Department, that Ayala was deliberately indifferent to his need for medical assistance, and that the City of Houston and City of Houston Police Chief Noe Diaz should be held responsible. (*Id.*). At the Court's request, Cantu also filed a supplemental statement of his claims. (Dkt. 17).

---

[1]Cantu filed this action while he was detained at the Jail. Mail sent to him in late May was returned as undeliverable, with notation that he had been released from custody. (Dkt. 26). Cantu has not provided the Court with an updated address since his release, as required by Southern District of Texas Local Rule 83.4.

After the screening required by 28 U.S.C. § 1915A, the Court dismissed Cantu's claims against the City of Houston and Chief Diaz and ordered service of process on Ayala. (Dkt. 18). Ayala responded with a motion to dismiss. (Dkt. 20). Because the motion relied on exhibits outside of the complaint, the Court converted it to a motion for summary judgment and ordered the parties to submit any other evidence relevant to Cantu's claims. (Dkt. 23). Ayala submitted additional evidence. (Dkts. 24, 25). Cantu has not responded to either the motion or the Court's order, and his time to do so has now expired. Based on the Court's review of the motion, the pleadings and evidence, the record, and the law, the Court grants Ayala's motion for summary judgment and dismisses this action with prejudice.

## I. BACKGROUND

Cantu's complaint is somewhat hard to follow. But in general, he alleges that on March 21, 2025, he was at a Whataburger in Houston when he began suffering chest pains "due to possible accidental ingestion of fentanyl." (Dkt. 1, p. 4). Both City of Houston Fire Department officers and City of Houston Police Department officers arrived at the scene. (*Id.*). Cantu alleges that instead of dealing with his medical issues, officers arrested him and put him in the back of Ayala's patrol car. (*Id.*). Ayala then turned on the car's heater and refused to provide Cantu with water. (*Id.* at 5). Ayala then also "wasted time" checking for warrants. (*Id.*). Cantu alleges that this went on for some time despite him "exhibiting obvious signs of

2/18

intoxication" and being "in an extremely disturbed mental state," and despite the existence of "an open stab wound" on his side. (*Id.* at 4–5).  After a time, Cantu began yelling. (*Id.* at 5).  Ayala opened the car door, told Cantu to "shut up," and then closed the door again. (*Id.*).  Cantu alleges that Ayala did this "several times" before driving Cantu to a psychiatric hospital twenty-five minutes away. (*Id.*).

Cantu alleges that these actions show that Ayala was deliberately indifferent to his need for medical care by refusing to have a "competent medical person" examine him. (*Id.* at 4).  He also alleges that Ayala ignored him "for several hours" before dropping him off at the psychiatric center. (*Id.* at 5).

In his More Definite Statement, Cantu alleges that he had ingested either cocaine or fentanyl in the parking lot of Whataburger. (Dkt. 17, p. 2–3).  He went inside to get something to eat to help him calm down, and the manager called 9-1-1. (*Id.* at 3–4).  Cantu states that he had a stab wound on his left side that had occurred the day before when he was robbed leaving work. (*Id.* at 3).

Cantu alleges that fire department officers arrived at Whataburger in response to the 9-1-1 call, but no EMTs were on board. (*Id.* at 4).  He asserts that no one, whether from the fire department or the police department, assessed his medical condition at Whataburger. (*Id.*).  Instead, he was handcuffed and placed in the back of Ayala's car. (*Id.* at 4–5).  He contends that this was a "false arrest" because he had not committed any crime. (*Id.* at 5).

3/18

Cantu alleges that he was in the back of Ayala's patrol car for fifteen to twenty minutes before they left for the hospital. (*Id.* at 6). During that time, Cantu alleges that he begged for medical attention, but he asserts that no one would provide it to him. (*Id.*). Instead, Ayala kept asking him for his name and date of birth, wasting time while Cantu's life was at risk. (*Id.* at 7).

Finally, Ayala drove him to a psychiatric hospital that was the furthest one from Whataburger. (*Id.* at 8–9). Once there, Cantu alleges that Ayala would not let him out of the car. (*Id.* at 9). Instead, Cantu was left in the back of the patrol car, screaming for help. (*Id.*). Ultimately, Cantu was admitted to the psychiatric hospital, where he stayed for three days. (*Id.* at 10). He alleges that he was treated for the stab wound as well as other conditions while there. (*Id.* at 10–11).

As relief, Cantu seeks money damages. (Dkt. 1, p. 4). He also states that he would like Ayala to stop working as a police officer because "it would be safer." (Dkt. 17, p. 17).

In his motion to dismiss, Ayala contends that Cantu has failed to allege facts demonstrating that any of Ayala's actions resulted in an injury. (Dkt. 20, p, 6). He maintains that Cantu's allegations, even taken as true, do not show that Ayala violated Cantu's Fourth Amendment rights. (*Id.* at 9–14). And he contends that the facts do not show that he was deliberately indifferent to any serious medical need.

4/18

(*Id.* at 14–16).  In making these assertions, Ayala relies in part on the police report from the night in question.  (Dkt. 20-1).

Given Ayala's reliance on documents outside of the complaint and its attachments, the Court notified the parties that under Federal Rule of Civil Procedure 12(d), it intended to treat Ayala's motion to dismiss as a motion for summary judgment.  (Dkt. 23).  The Court gave both Cantu and Ayala time to submit any additional arguments and documents in support of the motion now characterized as one for summary judgment.  (*Id.* at 3).

Ayala filed additional documents, including records from the Houston Police Department and Houston Fire Department, an emergency detention order issued for Cantu, and body camera footage from all the officers who were at the scene.  (Dkts. 24, 25).

The Houston Police Department report shows that officers were called to the Whataburger for a welfare check on a person who was "in the street talking to himself" and "possibly under the influence of something."  (Dkt. 24-1, p. 4).  When the police arrived, Cantu ran into oncoming traffic, and he was physically combative.  (*Id.* at 5).  He also stated that he was a sergeant in a drug cartel and that "Mexicans are trying to kill him."  (Dkt 24-2, p. 2).  He was detained for his own safety, and identifying information was requested.  (Dkt. 24-1, p. 5).  When EMTs from the Houston Fire Department asked about taking his vital signs, Cantu replied, "You can

5/18

take my vitals when I die." (*Id.*). However, he later permitted EMTs to take his vital signs, which were normal. (Dkt. 24-3, p. 3).

Ayala asked Cantu the qualifying questions for an Emergency Detention Order under Texas Health & Safety Code § 573.001(a) based on Cantu appearing to be a danger to himself. (Dkt. 24-2, p. 2). Ayala then called for authorization to transport Cantu to a mental health facility. (Dkt 24-1, p. 5). On the way to the hospital, Cantu was kicking and hitting his head on the inside of the patrol car. (*Id.*). Once at the hospital, he was given a shot to help calm him and left in the custody of hospital staff. (*Id.*).

The body camera footage shows that City of Houston Police Officers Elliott and Fuentes were the first officers to arrive on the scene. (Dkts. 24-6, 24-7). As they pulled into the parking lot, Cantu ran barefoot through the parking lot and into heavy traffic on the highway frontage road. (*Id.* at 15:47). Officer Elliott caught Cantu on the far side of the frontage road, detained him for his safety, and brought him back across to the Whataburger parking lot. (*Id.* at 15:49). Ayala arrived at the scene as Elliott and Fuentes were walking Cantu back to the parking lot. (*Id.*).

Ayala approached Cantu, who was yelling incoherently. (Dkt. 24-4 at 15:49). As other officers searched Cantu for weapons, they lifted his shirt, and no stab wounds were visible anywhere on his torso. (*Id.*). After the search, Cantu was

placed into the back of Ayala's patrol car. (*Id.* at 15:50). Ayala's partner opened the door on the other side of the patrol car to allow for air flow. (*Id.*).

Ayala then questioned Cantu, trying to get his name, date of birth, and address. (*Id.* at 15:50-15:54). Cantu generally responded, although the responses were somewhat garbled and were interspersed with incoherent yelling. (*Id.*). When Ayala asked Cantu whether he was suicidal, Cantu stopped yelling, closed his eyes, and seemed to consider the question before saying that he was not. (*Id.*). It is clear from the body camera footage that Cantu could not safely be released at the Whataburger.

After obtaining identifying information, Ayala asked Houston Fire Department EMTs to check Cantu. (*Id.* at 15:56). Cantu agreed, and EMTs checked his pulse, blood pressure, and respiration. (*Id.*). Those vital signs were stable. (*Id.*). While his vital were being checked, Cantu told the EMTs that he had not used any drugs or illegal substances that day. (*Id.* at 15:58).

After that, Ayala and his partner made the calls necessary to place Cantu under an Emergency Detention Order for his safety. (*Id.* at 16:00). During that process, Officer Fuentes told Ayala that the Whataburger manager had reported that Cantu came into the restaurant and asked for a cup of water. (*Id.* at 16:01). She gave him an empty cup and pointed him to the soda fountain, but Cantu did not get any water; instead, he began yelling and making a scene. (*Id.*). That was when the manager called 9-1-1. (*Id.*).

7/18

Shortly after that conversation, Ayala and his partner received authorization to transport Cantu to Memorial Herman Southeast Hospital. (*Id.* at 16:04). As they drove, Cantu was hitting his head on the divider between the front and rear seats. (*Id.* at 16:21). Once they arrived, Ayala called inside to start the transfer process. (Id.). Shortly thereafter, they were given permission to bring Cantu inside for admission. (*Id.* at 16:39).

Cantu did not respond to the motion to dismiss, did not respond to the Court's order converting the motion to a motion for summary judgment, and did not submit any evidence in opposition to Ayala's motion. His time to do so has now expired.

## II.   **LEGAL PRINCIPLES**

### A.   **Actions Under 42 U.S.C. § 1983**

Cantu brings his claims under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health,* 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, the plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman,* 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The first element

8/18

recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983) (per curiam). The second element means that generally only *state* actors—not private parties—can be liable for violations of civil rights. *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.*, 765 F.2d 1278, 1283 (5th Cir. 1985).

## B.     The Summary-Judgment Standard

The Court converted the motion to dismiss to a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston,* 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.,* 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna,* 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (cleaned up).

9/18

When considering a motion for summary judgment, the district court must view all evidence "in the light most favorable to the [nonmoving] party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380.  All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Carter v. Dupuy,* 173 F.4th 561, 565 (5th Cir. 2026) (citing *Griggs v. Brewer,* 841 F.3d 308, 312 (5th Cir. 2016)).  But courts will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Further, if record evidence clearly contradicts a party's version of events, the Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253–54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  This is particularly true for video evidence.  When video evidence exists, the Court will "view[] the facts in the light depicted by the videotape." *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 381); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene."); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on

10/18

the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.").

If the moving party satisfies its initial burden to show the absence of any factual disputes, the burden shifts to the opposing party to point to evidence that shows that genuine disputes of material fact do, in fact, exist. *See Little*, 37 F.3d at 1075. This burden cannot be satisfied with conclusory allegations or unsubstantiated assertions. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must identify specific facts in the record that show that there is a genuine issue for trial. *Id.* (citing *Celotex*, 477 U.S. at 325). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Id.* at 1076.

## C.    *Pro Se* **Pleadings**

Cantu is proceeding *pro se* in this action. Pleadings filed by *pro se* litigants are not held to the same stringent and rigorous standards as pleadings filed by lawyers and instead must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). But even under a liberal construction, *pro se* plaintiffs "must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a

11/18

notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (footnotes omitted).

## III.  DISCUSSION

The only claims remaining in this action are Cantu's claims against Ayala. Cantu alleges that Ayala violated his constitutional rights by falsely arresting him and by being deliberately indifferent to his need for medical care. Ayala responds that the undisputed evidence shows no constitutional violations. He also contends that he is protected by qualified immunity.

### A.  Fourth Amendment Claim

Cantu first alleges that his Fourth Amendment rights were violated because he was subject to a "false arrest." (Dkt. 1, p. 4). In his More Definite Statement, he admits that he was not arrested but instead only detained. (Dkt. 17, pp. 4–5). Nevertheless, he asserts that he should not have been either detained or handcuffed. (*Id.* at 5).

The Supreme Court has held that an officer may detain a person if the officer has reasonable grounds to believe that the person presents a danger to the officer, to third parties, or to himself. *See Terry v. Ohio*, 392 U.S. 1, 22–23 (1968). If during that detention the officer develops probable cause to believe that the person presents a danger to himself, the officer may seize the person and transport him for mental examination and treatment. *See, e.g., Holloway v. Purvis,* 680 F. App'x 282, 285

12/18

(5th Cir. 2017)(per curiam) ("[O]fficers may constitutionally seize a person without a warrant when the officers have probable cause to believe the person, whom they believe to be suicidal, is a danger to himself or others." (citing *Cantrell v. Murphy*, 666 F.3d 911, 923 (5th Cir. 2012))); *Sullivan v. County of Hunt, Tex.*, 106 F. App'x 215, 218 (5th Cir. 2004). Probable cause in this context exists when "the facts and circumstances within the officer's knowledge at the time of the seizure are sufficient for a reasonable person to conclude that an individual is mentally ill and poses a substantial risk of serious harm." *Cantrell*, 666 F.3d at 923. In addition, Texas law "authorizes a peace officer to take a person into custody without a warrant if the officer reasonably believes that (i) a 'person is mentally ill,' (ii) there is a 'substantial risk of serious harm to the person . . . unless the person is immediately restrained,' and (iii) there is insufficient time to obtain a warrant." *Martinez v. Smith*, 200 F.3d 816, 1999 WL 1095667, *2 (5th Cir. Nov. 4, 1999) (per curiam) (quoting TEX. HEALTH & SAFETY CODE §573.001(a)). Whether under *Terry* or Texas law, the person may be handcuffed for his own safety as well as that of the officers during such a detention. *See United States v. Sanders*, 994 F.2d 200, 209–10 (5th Cir. 1993).

In this case, the summary judgment evidence shows that Cantu showed signs of being impaired while at the Whataburger and made a scene sufficient to raise the manager's concerns for Cantu's safety and the safety of others. When officers

13/18

arrived, Cantu ran barefoot into Houston rush hour traffic. He yelled incoherently at several of the officers, including Ayala, and the statements he made that could be understood were completely fanciful. Body camera footage shows him alternating between cooperation, hostility, and incoherence. This evidence is sufficient to give a reasonable officer in Ayala's position probable cause to believe that Cantu was a risk to himself and others if released. This, in turn, was sufficient to justify Cantu's seizure for transport to the hospital for mental examination and treatment.

Cantu has offered no evidence sufficient to create a genuine issue of material fact as to whether he was seized in violation of his constitutional rights. Instead, the undisputed summary judgment evidence shows that he was lawfully detained and seized. Ayala's motion for summary judgment on Cantu's Fourth Amendment claim will be granted, and this claim will be dismissed with prejudice.

## B.   **Deliberate Indifference Claim**

Cantu also claims that Ayala violated his constitutional rights by being deliberately indifferent to his need for medical care. Ayala maintains that there is no evidence to support this claim.

The Fourteenth Amendment protects an arrestee's right "not to have their serious medical needs met with deliberate indifference on the part of . . . officials." *Brooks v. Taylor County*, 592 F. Supp. 3d 550, 556 (N.D. Tex. 2022) (citing *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)). A "serious medical

14/18

need" is one for which treatment has been recommended or that is so apparent that even laymen would recognize that care is required. *Gobert v. Caldwell*, 463 F.3d 339, 345 n12 (5th Cir. 2006). An official displays "deliberate indifference" when (1) the official is aware of facts giving rise to an inference that a substantial risk of serious harm exists, and (2) the official draws the inference but disregards the risk. *See Dyer*, 964 F.3d at 380 (citing *Domino v Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)). This same standard applies to encounters between individuals and police officers even if the person is not formally arrested or taken into police custody. *See, e.g., United States v. Mitchell*, No. 10-cr-284, 2012 WL 1118599, *7 (E.D. La. Apr. 3, 2012) (collecting cases), aff'd, 538 F. App'x 369 (5th Cir. 2013).

But in all contexts, the standard for deliberate indifference is "extremely high." *Domino*, 239 F.3d at 756. To meet it, the plaintiff must allege facts showing that despite knowing of a substantial risk, the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Actions and decisions by officials that are "merely inept, erroneous, ineffective, or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998); *see also Farmer v. Brennan*, 511 US 825, 835 (1994). Further, "an officer's failure to immediately recognize ambiguous

15/18

symptoms as a medical emergency does not amount of deliberate indifference."

*Trevino v. Hinz*, 751 F. App'x 551, 555 (5th Cir. 2018) (per curiam).

Cantu does not allege facts or offer evidence to satisfy this extremely high standard. He alleges that Ayala delayed for fifteen to twenty minutes before transporting him to the psychiatric hospital. While true, the summary judgment evidence does not show that Cantu needed emergency medical treatment during that time or that he suffered any injury as a result of the short delay. EMTs had assessed him and had determined that his vital signs were stable. No stab wound was visible on his torso when he was searched. And while Cantu was obviously in need of mental health treatment, there were no obvious signs of any physical health issues. This relatively brief delay is insufficient to show that Ayala was deliberately indifferent to Cantu's need for medical care.

Cantu also alleges that Ayala displayed deliberate indifference by driving him to a hospital other than the nearest one. But Cantu offers no evidence showing that space was available at a closer facility or that Ayala deliberately ignored a closer facility. Indeed, the body camera footage captured Ayala asking for approval to transport Cantu to Memorial Herman Hospital Southeast because it would be the quickest hospital to get to considering the late afternoon traffic. Further, the summary judgment evidence shows that Ayala and Cantu arrived at the hospital approximately fifteen minutes after leaving the Whataburger. This evidence

16/18

contradicts Cantu's allegations that Ayala unreasonably delayed transporting him or that he was deliberately indifferent to Cantu's need for medical care.

In short, the video evidence conclusively contradicts Cantu's factual allegations and shows that Ayala did not display deliberate indifference to either Cantu's physical or mental health needs. Cantu has offered no evidence to raise any disputed issues of material fact sufficient to avoid summary judgment. Ayala's motion for summary judgment on this claim will be granted, and Cantu's claims based on deliberate indifference will be dismissed with prejudice.

## C. **Qualified Immunity Defense**

Ayala also raises the affirmative defense of qualified immunity. "Qualified immunity protects officers from suit unless their conduct violates a clearly established right." *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 322 (5th Cir. 2023) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Determining whether qualified immunity protects an official in a particular situation involves two steps: "first we ask whether the officer's alleged conduct has violated a federal right; . . . second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc)).

17/18

As explained above, Cantu has not met his burden to show that Ayala violated his constitutional rights. Without a constitutional violation, consideration of the second question is thus unnecessary. Ayala's motion for summary judgment on the basis of qualified immunity will therefore be granted.

## IV.  CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The motion to dismiss by Officer V.H. Ayala, (Dkt. 20), is converted to a motion for summary judgment and is **GRANTED**.

2. The civil-rights action by Plaintiff Heros Christopher Cantu is **DISMISSED with prejudice**.

3. Any other pending motions are **DENIED as moot**.

4. Final judgment will be separately entered.

   The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____ July 28 _____, 2026.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE

18/18